# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CURTIS WARNER, on behalf of himself and all others similarly situated, | ) ) ) | 18-cv-727 |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC., and SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS, LLP, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF TO PREVENT UNFAIR DEBT COLLECTION PRACTICES, AND FOR MONEY DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

Plaintiff CURTIS WARNER ("Mr. Warner"), complaining of Defendants MIDLAND FUNDING, LLC ("Midland"), MIDLAND CREDIT MANAGEMENT, INC. ("MCM"), and SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS, LLP ("Smith Debnam"), shows the Court:

1.     Mr. Warner brings this action for declaratory and injunctive relief as well as actual and statutory damages, on behalf of himself and classes of North Carolina consumers who find themselves in similar situations, against Defendants for deceptive debt collection practices that violated Federal law, and for threatened future unfair debt collection practices that would violate North Carolina law.

## II. Parties

1

2.     Plaintiff Curtis Warner is a natural person now residing in Davidson, North Carolina, but who was residing in Concord, North Carolina at all times relevant to the events described in this Complaint.

3.     Mr. Warner is a "consumer" as that term is defined by 15 U.S.C. §1692a(3), which is part of the Fair Debt Collection Practices Act ("FDCPA"). He is also a "consumer" as that term is defined by N.C. Gen. Stat. § 58-70-90(2), which is part of the North Carolina Collection Agency Act ("NCCAA").

4.     Defendant Midland Funding, LLC ("Midland") is a limited liability company organized and existing under the laws of the State of Delaware. Its principal place of business is located at 3111 Camino Del Rio N., Suite 103, San Diego, CA 92108.

5.     Midland is engaged in the business of purchasing delinquent or charged-off consumer credit accounts. Midland is therefore both a "debt buyer" and a "collection agency" as those terms are defined by N.C. Gen. Stat. § 58-70-15(b).

6.     Midland has applied for and been granted a license to operate as a collection agency by the North Carolina Department of Insurance, and has been issued the permit number 103072.

7.     The principal purpose of Midland's business — i.e., the way that Midland makes money — is by collecting the delinquent or charged-off debts it purchases. In the course of this business, it uses instrumentalities of interstate commerce or the mails to accomplish several different tasks, among them: Communicating with its parent corporation Encore Capital Group; communicating

2

with related Encore subsidiaries including, but not limited to, MCM, which services much of the debt that Midland has purchased; communicating with investors to raise capital that Midland uses to purchase debts; communicating with national banks and other lenders to negotiate purchases of debts; and communicating with attorneys across the United States (including in North Carolina) that file lawsuits against consumers to collect upon the debts that it purchases.

8.    Moreover, Midland regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. Put another way, while Midland is in the business of collecting debts from consumers, it never loans money to consumers; rather, all of the debts which Midland collects or attempts to collect are asserted to be owed or due to the national bank, lender, or other entity from whom Midland purchased the debt. Midland usually undertakes its collection efforts *indirectly*, through its sister company MCM, through other third-party debt collection agencies hired by MCM, or through debt-collection law firms that file lawsuits on Midland's behalf.

9.    For the foregoing reasons, Midland is a "debt collector" as that term is defined by 15 U.S.C. § 1692(a)(6).

10.    Defendant Midland Credit Management, Inc. ("MCM") is a limited liability company organized and existing under the laws of the State of Kansas. Its principal place of business is located at 3111 Camino Del Rio N., Suite 103, San Diego, CA 92108.

3

11.     MCM is directly and indirectly engaged in soliciting, from more than one person, delinquent claims asserted to be owed or due; MCM is also directly and indirectly engaged in the asserting, enforcing, and prosecuting of those claims. MCM is therefore a "collection agency" as that term is defined by N.C. Gen. Stat. § 58-70-15(a).

12.     MCM has applied for and has been granted licenses to operate as a collection agency by the North Carolina Department of Insurance, and has been issued the permit numbers 3777, 4182, 4250, 101659, 103072, 111895, 112039, 112678, 113170, and 113236.

13.     The principal purpose of MCM's business — i.e., the way that MCM makes money — is by collecting the delinquent or charged-off debt that its sister company Midland purchases. In the course of this business, it uses instrumentalities of interstate commerce or the mails to accomplish several different tasks, among them: Communicating directly with consumers via telephone, email, and mail; communicating with third-party collection agencies it retains to collect the debts it services; and communicating with attorneys across the United States (including in North Carolina) that file lawsuits against consumers to collect upon the debts that it services.

14.     Moreover, MCM regularly collects or attempts to collect debts owed or due or asserted to be owed or due another — i.e., Midland. Midland undertakes these collection efforts both *directly* (i.e., by communicating directly with

consumers) and *indirectly* (i.e., by retaining third-party collection agencies and law firms to do the collecting).

15.     For the foregoing reasons, MCM is a "debt collector" as that term is defined by 15 U.S.C. § 1692(a)(6).

16.     Defendant Smith Debnam Narron Drake Saintsing & Myers, LLP ("Smith Debnam") is a limited liability partnership and a law firm, organized and existing under the laws of the State of North Carolina. Its principal place of business is located at 4601 Six Forks Rd., Ste. 400, Raleigh, NC 27609.

17.     Smith Debnam's website lists one of its practice areas as "Creditors' Rights & Collections." Its website further states that its clients include "Banks, Finance companies, . . . Debt buyers, Collection agencies, Credit unions, . . . [and] Mortgage companies," and that it is "equipped to handle . . . routine commercial and consumer collections . . . ." Smith Debnam's website also lists one of its "Services Offered" as "Collection Litigation."

18.     Acting on behalf of its client Midland, Smith Debnam has filed several lawsuits against North Carolina consumers to collect consumer debts. Smith Debnam also regularly sends debt-collection letters to North Carolina consumers on behalf of Midland and its other clients.

19.     For the foregoing reasons, Smith Debnam is a "debt collector" as that term is defined by 15 U.S.C. § 1692(a)(6).

20.     While Smith Debnam does represent Midland, on information and belief, it was MCM's decision to retain Smith Debnam to represent Midland.

Moreover, on information and belief, all communications regarding Smith Debnam's representation of Midland are actually between Smith Debnam and MCM. In other words, while Smith Debnam is certainly Midland's attorney, Smith Debnam is also an agent of MCM because it is obligated to follow MCM's instructions pertaining to Smith Debnam's representation of Midland.

## III. Jurisdiction & Venue

21.     This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

22.     This Court has supplemental jurisdiction over Plaintiff's North Carolina state law claims under 28 U.S.C. § 1367, in that his state law claims are so related to his FDCPA claims that they form part of the same case or controversy.

23.     Venue is proper in this district under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred within this district, specifically: All of the letters containing the false threats and misrepresentations described below were sent to and received by Plaintiff at his former residence in this district.

## IV. Factual Allegations

24.     Sometime before 2017, Plaintiff applied for an obtained a J. Crew-branded credit card account ("the Account") that was issued by Comenity Bank.

25.     Plaintiff used the Account exclusively for personal, family, and/or household purposes.

26. Mr. Warner owns and operates his own small business. Sometime around the beginning of 2017, Mr. Warner's business started to run into cash-flow problems, and he became unable to make the minimum payments on the Account.

27. Comenity Bank charged-off Mr. Warner's account on or about April 7, 2017, and sold the account to Midland on or about June 22, 2017.

28. On or about November 2, 2017, MCM mailed Mr. Warner the "Pre-Legal Notification" attached to this Complaint as **Exhibit A**.

29. Among other things, the Pre-Legal Notification stated:

> You may request the following information by writing us at 2365 Northside Drive Suite 300, San Diego, CA 92108 and the same will be provided to you at no cost within 30 days of receipt of your written request: 1) An account statement or complete transactional history, as applicable, reflecting your name, the last four digits of the account number at the time of charge-off, and the charge-off balance and/or claimed balance, excluding any post charge off payments; 2) A listing of all prior owners of this account and transfer information; 3) Documentation evidencing the transfer of ownership of the account to Midland Funding; 4) An account statement or complete transactional history reflecting purchase, payment or other actual use of the account or a signed document reflecting the opening of the account at issue; 5) An explanation of how any amount we are seeking to collect in excess of charge-off was calculated; and 6) If applicable, the terms and conditions applicable to the account.

30. On June 7, 2018, Smith Debnam mailed Mr. Warner the letter attached to this Complaint as **Exhibit B** ("the g Notice"). The body of the g Notice reads:

> This is to notify you that Midland Funding LLC has retained this law firm to collect its claim against you for the balance owing on your COMENTIY BANK J CREW

7

account. We assume this to be a valid debt unless you contact us within 30 days of your receipt of this letter to dispute all or any part of the balance indicated. If you notify us in writing of any dispute with regard to this debt within 30 days of receiving this letter, we will obtain verification of the debt or a copy of the judgment against you, if any, and mail it to you. Upon your written request within 30 days following your receipt of this letter, we will provide you with the name and address of the original creditor, if different from the current creditor. <u>This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.</u>

If you have made payments to reduce the amount stated, please advise the amount paid, to whom it was paid, and when payment was made. It is our desire to give you an opportunity to resolve this claim before legal action becomes necessary, and we are willing to discuss this matter with you or your attorney. Please note, this account is now handled from our office, [sic] all contact and payments <u>must</u> come through us. **If you wish to discuss this claim, please call Kendra Burnette at 919/250-2142 at extension 2156 or the toll-free number above.**

**If this account is not disputed, we request payment be sent to our office, payable to Midland Funding LLC for the balance due — do not mail your payments to COMENITY BANK J CREW.** If payment is not received, legal action may become necessary. It is important that this claim be paid or we receive a reply from you in connection with this account. Otherwise, we will assume that you do not wish to resolve this matter amicably.

(All emphases in original).

31.     On July 12, 2018, Smith Debnam sent Mr. Warner the letter that is attached to this Complaint as **<u>Exhibit C</u>**, which was styled as a "Notice of Intent to File Legal Action."

32.     The body of the Notice of Intent reads, in pertinent part:

8

This firm has been retained by Midland Funding LLC to collect the balance due on original account number . . . . The current balance owed is $2,274.76. The original creditor was COMENITY BANK J CREW. The name, address and telephone number of the debt buyer is:

Midland Funding LLC . . . .

This letter is notification that our client intends to file a lawsuit you and is being provided to you at least 30 days in advance of any filing. We are enclosing copies of account documentation evidencing the debt and an accounting of the amounts owed. Should you wish to discuss resolution of this account, please contact us. . . .

33. The Notice of Intent is printed on letterhead, the left side of which contains the words "Smith Debnam" in a large font and, directly underneath, in all capital letters, the words "ATTORNEYS AT LAW." The right side of the letterhead includes the full name of the firm in all-caps: "SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS, LLP."

34. The Notice of Intent was signed by Christina McAlpin Taylor, who is an attorney licensed to practice in the courts of North Carolina, and who is listed on Smith Debnam's website as a partner in that firm.

35. Beneath Ms. Taylor's signature, there is a line of small print that reads, "dbtbyr.frm."

36. Attached to the Notice of Intent is what appears to be a form cardmember agreement used by Comenity Bank in connection with its credit card accounts. Also attached to the Notice of Intent is a document that resembles a periodic credit card statement, but which is dated April 7, 2017 — the same date that Comenity charged off the Account ("the Charge-Off Statement").

9

37.    The Charge-Off Statement indicates a "new balance" of $2,274.76, a "late fee" of $37 posted to the account on April 3, 2017, and a monthly interest charge of $46.50. The Charge-Off Statement also indicates, in a box captioned, "2017 totals year to date," "total fees charged in 2017" of $148, and "total interest charged in 2017" of $175.35. Finally, the Charge-Off Statement includes a "previous balance" of $2,191.26."

38.    N.C. Gen. Stat. § 58-70-115 lists several "unfair practices" that collection agencies are not legally permitted to undertake in North Carolina.

39.    Section 58-70-115(6) prohibits the following unfair practice:

> When the collection agency is a debt buyer or acting on behalf of a debt buyer, bringing suit or initiating an arbitration proceeding against the debtor to collect on a debt without first giving the debtor written notice of the intent to file a legal action at least 30 days in advance of filing. The written notice shall include the name, address, and telephone number of the debt buyer, the name of the original creditor and the debtor's original account number, a copy of the contract or other document evidencing the consumer debt, and an itemized accounting of all amounts claimed to be owed.

40.    The Notice of Intent that Smith Debnam sent to Mr. Warner does include the name, address, and telephone number of Midland. The Notice of Intent also includes the name of the original creditor and the original account number.

41.    The Notice of Intent, however, does *not* include an "itemized accounting" of the $2,274.76 claimed to be owed.

42.    The only part of the Notice of Intent that even touches upon the calculation of the $2,274.76 claimed to be owed is the attached Charge-Off

Statement. But the Charge-Off Statement contains only two items: a fee of $37 charged on April 3, 2017, and a single monthly interest charge of $46.50. The rest of the $2,274.76 claimed to be owed is lumped into the unexplained, nonitemized, unaccounted-for previous balance of $2,191.26.

43.     Black's Law Dictionary, 3rd Ed. ("Black's"), defines *accounting* as

> The act or a system of establishing or settling financial accounts; esp. the process of recording transactions in the financial records of a business and periodically extracting, sorting, and summarizing the recorded transactions to produce a set of financial records. . . . A rendition of an account . . . . The term frequently refers to the report of all items of property, income, and expenses prepared by a personal representative, trustee, or guardian and given to heirs, beneficiaries, or the probate court. . . .

44.     Black's defines *itemize* as, "To list in detail; to state by items <an itemized bill>."

45.     The Charge-Off Statement is not an itemized accounting of the $2,274.76 claimed to be owed; at best, it is an itemized accounting of the $83.50 added to the amount due in the final month before the Account was charged off; in other words, less than 4% of the total amount of the alleged debt is itemized.

46.     The fact the Notice of Intent does not contain an itemized accounting is perplexing, given that Smith Debnam's principal, MCM, in the Pre-Legal Notice is mailed to Mr. Warner, claimed to have access to and promised to provide upon request a "complete transactional history reflecting purchase, payment or other actual use of the account . . . ."

47.     Midland and MCM are required to send a Notice of Intent that complies with N.C. Gen. Stat. § 58-70-115(6) before they may file a lawsuit against Mr. Warner. While there is nothing in § 58-70-115(6) that prevents them from assigning this task to their attorney, they are ultimately responsible for making sure Mr. Warner and those in similar situations receive the Notice of Intent that includes all the information required by § 58-70-115(6). Thus, Midland and MCM are liable for any omissions and errors in the Notices of Intent sent by Smith Debnam.

48.     It is an unfair practice — and, thus, illegal — for a debt buyer to file a complaint initiating a debt collection lawsuit before sending a Notice of Intent that complies with § 58-70-115(6). Yet that is exactly what Smith Debnam has threatened to do here.

49.     Based on the foregoing, it does not appear that, before it sent the Notice of Intent, Smith Debnam or any of its attorneys conducted any inquiry into whether its clients possessed the information or documentation legally required to be included in the Notice of Intent.

50.     The Notice of Intent sent to Mr. Warner deprived him of the right, created the North Carolina General Assembly, to receive an itemized accounting of the alleged debt before any collections lawsuit was filed against him. It follows that the Notice of Intent subjected Mr. Warner to the risk of a harm that the North Carolina General Assembly enacted § 58-70-115(6) to prevent — specifically, the

12

risk that he would be subjected to, and possibly lose, a collections lawsuit based on an amount due that is unreliable and unverifiable.

51.     Moreover, when Mr. Warner read the Notice of Intent, he became worried and distressed over the prospect of defending a debt collection lawsuit.

52.     On information and belief, Smith Debnam regularly represents Midland and MCM in debt collection lawsuits in local courts across the state of North Carolina.

53.     On information and belief, Smith Debnam regularly sends North Carolina letters that purport to be Notices of Intent to File Legal Action required by North Carolina law but that include only a charge-off statement or other account statement(s) with nonitemized "previous balances" — that, in other words, do not contain the "itemized accounting" required by the N.C. Gen. Stat. § 58-70-115(6).

## V. Class Action Allegations

54.     As further explained below, Plaintiff seeks to certify three classes: An Injunction Class that is maintainable under Fed. R. Civ P. 23(b)(2), and a Damages Class that is maintainable under Fed. R. Civ. P. 23(b)(3). Both classes are also maintainable under Fed. R. Civ. P. 23(b)(1). It is likely that there is some overlap between the classes and, as explained further below, Mr. Warner is a member of both classes.

55.     Under Federal Rules of Civil Procedure 23, a class action is appropriate and preferable in this case because:

      a.   Based on the fact that the Notice of Intent at the heart of this litigation is a mass-mailed form letter, the class

is so numerous that joinder of all members is impractical.

b. As to the Injunction Class, Defendants have acted or refused to act on grounds that apply generally to the class — i.e., whether Defendants have met the conditions precedent required before they are legally entitled to sue the class members — so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

c. As to the Damages Class, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members; the principal question presented respecting the Damages Class is whether the purported Notice of Intent sent by Smith Debnam (**Exhibit C**) violated various provisions of the FDCPA, as further explained below;

d. The only individual issue is the identification of the consumers who received the Notice of Intent (i.e. the Class members) which is a matter capable of ministerial determination from Defendants' records;

e. Plaintiff's claims are typical of those of the class members, as they are based on the same facts and legal theories.

f. Plaintiff will fairly and adequately represent the class members' interests and has retained counsel experienced in bringing class actions and collection abuse claims.

56.     A class action is superior for the fair and efficient adjudication of the class members' claims as Congress specifically envisioned class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C. §1692k.

57.     The members of the class are generally unsophisticated consumers, whose rights will not be vindicated in the absence of a class action.

14

58.     Prosecution of separate actions by individual members of the class would also create the risk of inconsistent and varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interests of judicial economy.

## COUNT ONE: DECLARATORY JUDGMENT
### North Carolina Collection Agency Act
### (N.C. Gen. Stat. § 58-70-1 *et seq.*)

59.     Plaintiff incorporates by references the allegations of paragraphs 1 through 58 as if fully repeated here.

60.     This Count is brought by Plaintiff, individually and on behalf of a Class ("the Injunction Class") consisting of consumers with North Carolina addresses, as follows:

> All consumers with North Carolina addresses, who: (a) on or after August 24, 2015; (b) were sent a letter by Defendant Smith Debnam in a form materially identical or substantially similar to the letter attached to Plaintiff's Complaint as **Exhibit C**; (c) Smith Debnam attached to the letter account statement(s) or document(s) resembling account statement(s) that included "previous balances" not broken down into purchases, interest, fees, payments, etc.; (d) the debt sought to be collected by the letter was allegedly owed to Defendant Midland; (e) Midland has not, as of August 23, 2018, filed a lawsuit or arbitration to collect the debt that was the subject of the letter; and (f) the letter was not returned by the postal service as undelivered.

61.     Under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, this Court is authorized to declare the rights and other legal relations of any interested party seeking such a declaration.

15

62.     For the reasons explained above, Plaintiff, on behalf of himself and all other members of the Injunction Class, respectfully asks this Court for a Declaratory Judgment holding that the one-page form letter attached to this Complaint as **Exhibit C**, which purports to be a "Notice of Intent to File a Legal Action," is not, without something more, a "notice of intent to file a legal action" that meets the requirements of N.C. Gen. Stat. § 58-70-115(6).

63.     Further, for the reasons explained above, Plaintiff, on behalf of himself and all other members of the Injunction Class, respectfully asks this Court for a Declaratory Judgment holding that attaching an account statement, or multiple account statements, or documents resembling account statements, that include a "previous balance" not broken down into purchases, interest, fees, payments, etc., does not, without something more, satisfy the "itemized accounting" requirement of § 58-70-115(6).

64.     Therefore, Plaintiff, on behalf of himself and all other members of the Injunction Class, respectfully asks this Court for a Declaratory Judgment holding that neither Mr. Warner nor the class members have received the "notices of intent to file legal action" required by N.C. Gen. Stat. 58-70-115(6) as a condition precedent to initiating a lawsuit or arbitration against Mr. Warner or any class member.

65.     Finally, Plaintiff, on behalf of himself and all other members of the Injunction Class, respectfully asks this Court for Declaratory Judgment holding that Midland is not legally entitled to file any lawsuit or arbitration against Mr.

Warner or the class members regarding the debts referenced in the purported Notices of Intent to File Legal Action sent by Smith Debnam.

## COUNT TWO: INJUNCTIVE RELIEF
### North Carolina Collection Agency Act
### (N.C. Gen. Stat. § 58-70-1 *et seq.*)

66.     Plaintiff incorporates by references the allegations of paragraphs 1 through 65 as if fully repeated here.

67.     This Count is brought by Plaintiff, individually and on behalf of the Injunction Class", which has already been defined in paragraph 60 above.

68.     Plaintiff, on behalf of himself and all other members of the Injunction Class, respectfully asks this Court for an Order enjoining Midland from filing any lawsuit or arbitration against Mr. Warner or any class member until at least 30 days after they receive amended notices of intent that fully itemize the amounts allegedly due.

## COUNT THREE: MONEY DAMAGES
### Violations of Fair Debt Collection Practices Act in Notice of Intent
### (15 U.S.C. § 1692 *et seq.*)

69.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 68 as if fully repeated here.

70.     This Count is brought by Plaintiff, individually and on behalf of a Class (the "Damages Class") consisting of consumers with North Carolina addresses, as follows:

> All consumers with North Carolina addresses, who: (a) between the dates of August 24, 2017 and August 23, 2018, inclusive; (b) were sent a letter by Defendant Smith Debnam in a form materially identical or substantially

17

similar to the letter attached to Plaintiff's Complaint as **Exhibit C** sent to the Plaintiff; (c) Smith Debnam attached to the letter account statement(s) or document(s) resembling account statement(s) that included a "previous balances" not broken down into purchases, interest, fees, payments, etc.; (d) the debt sought to be collected by the letter was allegedly owed to Defendant Midland; and (e) the letter was not returned by the postal service as undelivered.

71. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

72. Specifically, FDCPA § 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."

73. Additionally, FDCPA § 1692e(5) prohibits a collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

74. Furthermore, FDCPA § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

75. By sending the purported Notices of Intent, Smith Debnam violated the provisions of the FDCPA cited above by:

- Falsely stating that the document being sent was the notice of intent to file legal action required to be sent under North Carolina law;

- Falsely stating that the attachments to the document included "an accounting of the amounts owed";

18

- Falsely representing that there had been meaningful attorney involvement in the drafting of the letter when, in fact, it is clear no attorney nor anyone else had compiled an itemized accounting or reviewed the itemized accounting to ensure it complied with N.C. Gen. Stat. § 58-70-115(6);

- Threatening to file a lawsuit soon after the expiration of the 30-day period after sending the letter — when, in fact, neither Smith Debnam nor its clients would have been legally entitled to do so, since the required notice of intent had not been sent.

76.     Both Midland and MCM are vicariously liable for Smith Debnam's misrepresentations and false threats.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury on all claims herein so triable.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Curtis Warner prays as follows:

A. That the Court issue an order certifying the Injunction Class as defined in paragraph 60, appointing Plaintiff as Class Representative, appointing Plaintiff's attorneys as Class Counsel, and directing appropriate notice to the Class;

B. As to Plaintiff and the Injunction Class, that the Court enter the Declaratory Judgment requested in paragraphs 62 through 65 above;

C. As to Plaintiff and the Injunction Class, that the Court enter a judgment permanently enjoining Midland from filing any lawsuit or arbitration against Mr. Warner or any class member, until at least 30 days after receipt of amended notices of intent that fully itemize the full amounts allegedly due;

19

D. As to Plaintiff, $1,000 is statutory damages;

E. As to the Damages Class, statutory damages in the amount of the lesser of $500,000 or one percent of Defendants' combined net worth;

F. Attorney fees, litigation expenses, and costs; and

G. Any other relief that this Court deems appropriate under the circumstances.

Dated: August 23, 2018
      Winston-Salem, NC

        **LAW OFFICE OF JONATHAN R. MILLER, PLLC d/b/a SALEM COMMUNITY LAW OFFICE**

        By: /s/ Jonathan R. Miller
           Jonathan R. Miller
           One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff:</u>

Jonathan R. Miller
N.C. State Bar No. 48224
Law Office of Jonathan R. Miller, PLLC,
d/b/a Salem Community Law Office
301 N. Main Street, Suite 2412
Winston-Salem, NC 27101
Telephone: 336-837-4437
Facsimile: 336-837-4436
Email: jmiller@salemcommunitylaw.com

Brian L. Bromberg
(to apply for admission *pro hac vice*)
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
brian@bromberglawoffice.com

21