IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CURTIS WARNER, )<br>*on behalf of himself and all others similarly situated*, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>MIDLAND FUNDING, LLC, )<br>MIDLAND CREDIT MANAGEMENT, INC., )<br>and SMITH DEBNAM NARRON DRAKE )<br>SAINTSING & MYERS, LLP, )<br>  )<br>Defendants. ) | 1:18CV727 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

This is a civil action arising from the debt collection and solicitation activities of the Defendants, Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM"), and both Midland Defendants jointly "Midland", and Smith Debnam Narron Drake Saintsing & Myers, LLP ("Smith Debnam"). (ECF No. 1.) Plaintiff Curtis Warner brings this action on behalf of himself, and others similarly situated, alleging that the Defendants' debt collection activities violated the North Carolina Collection Agency Act ("NCCAA"), N.C. Gen. Stat. § 58-70-1 *et seq.*, and the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (ECF No. 1 ¶¶ 1, 59–76.)

Currently before the Court are Midland's Motion to Compel Arbitration and to Dismiss Class Action Complaint Against Plaintiff Curtis Warner ("Motion to Compel and

Dismiss"), (ECF No. 24), and its Amended Motion to Seal, (ECF No. 53). For the reasons detailed below, Midland's Motion to Compel and Dismiss is granted and Amended Motion to Seal is granted in part and denied in part. Further, given the Court's decision on the instant motions, Plaintiff's motion to certify class and for preliminary injunction, (ECF No. 2), and Midland's initial motion to seal, (ECF No. 37), are each denied as moot.

I.  BACKGROUND

At some point in 2014, Plaintiff obtained a J. Crew credit card from Comenity Bank. (ECF No. 1 ¶ 24.) According to his Complaint, Plaintiff became unable to make the minimum required payments on his credit account, and his account was subsequently written off as a loss by Comenity even though the debt was still owed, and the account was then sold to Midland on or about June 22, 2017. (*Id.* ¶¶ 26–27.) In November of the same year, MCM mailed Plaintiff a "Pre-Legal Notification" which stated that Plaintiff had an outstanding balance and, if he did not provide payment by November 17, 2017, or MCM did not hear from him by that date, it would forward the account to an attorney. (*See* ECF No. 1-1 at 2.)

The following year, on June 7, 2018, Defendant Smith Debnam contacted Plaintiff with a notice that stated, among other things, that if Plaintiff did not dispute the account, legal action may result. (ECF No. 1-2 at 2.) Subsequently, on July 12, 2018, Smith Debnam sent Plaintiff a letter entitled "Notice of Intent to File Legal Action" regarding the alleged debt. (ECF Nos. 1 ¶ 31; 1-3.) Attached to the Notice of Intent was a form cardmember agreement and a periodic credit card statement. (ECF No. 1 ¶ 36.) In response, Plaintiff initiated this action seeking "declaratory and injunctive relief as well as actual and statutory damages" against all three named Defendants. (*Id.* ¶ 1.)

On December 21, 2018, Midland filed a Motion to Compel Arbitration and to Dismiss Class Action Complaint Against Plaintiff Curtis Warner ("Motion to Compel and Dismiss")[1], which requests that the Court "order this dispute to binding arbitration for the individual claims asserted by Plaintiff . . . and to dismiss . . . Plaintiff's purported class action claims because he waived the right to assert claims as a class or collective action in a binding written contract." (ECF No. 24 at 1.) Midland has also moved to seal certain attachments to their reply brief supporting their Motion to Compel and Dismiss. (ECF No. 53.)

## II.  MOTION TO COMPEL ARBITRATION

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the rights and responsibilities of parties to an arbitration agreement. *See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). Under the FAA, "[w]hen a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the [Act] commands the federal courts to stay any ongoing judicial proceedings and to compel arbitration." *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 552 (4th Cir. 2001) (first alteration in original) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)). "The primary substantive provision of the FAA, § 2," expresses a strong policy in favor of arbitration: a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Patten*

---

[1] Defendant Smith Debman filed a response and joinder to the Motion to Compel and Dismiss in which it stated that it "consents to and joins" Midland's motion. (ECF No. 27 at 1.)

*Grading & Paving*, 380 F.3d at 204 (quoting 9 U.S.C. § 2). Accordingly, a party may obtain an order compelling arbitration and a stay of federal court proceedings if it can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of [the opposing party] to arbitrate the dispute.

*Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)); *see also* 9 U.S.C. §§ 3–4.

"Motions to compel arbitration under an arbitration clause should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Zandford v. Prudential-Bache Secs., Inc.*, 112 F.3d 723, 727 (4th Cir. 1997) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989)). Although the "presumption in favor of arbitrability" is a "heavy" one, *see Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989), it is well-settled that a party "cannot be required to submit to arbitration any dispute which [it] has not agreed [to] submit," *see Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quotations omitted); *see also Lorenzo v. Prime Commc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015) ("[A] court may order arbitration only when it 'is satisfied that the parties agreed to arbitrate.'" (quoting *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010))). To that end, the party seeking to compel arbitration has the burden to prove that a valid arbitration agreement exists. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). Once the court is satisfied that a proponent of such agreement offers credible, admissible evidence to support a finding of an

4

agreement to arbitrate, the party opposing arbitration must unequivocally deny that such agreement exists and produce evidence to substantiate the denial. *See Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).

To determine whether the parties have agreed to arbitrate, this Court must apply state law principles governing contract formation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001). Under North Carolina law, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co., Inc. v. Byrd*, 261 S.E.2d 655, 656 (N.C. 1980). As federal law provides that state law governs this question and no party disputes the validity of the choice-of-law provision specifically, the Court will analyze whether the parties have agreed to arbitrate under Delaware law. (*See* ECF No. 25-1 at 8 ("This Agreement is governed by Delaware and applicable federal law. This is the law we are speaking of when we refer to a term permitted or required by applicable law.").)

Delaware law and public policy both favor arbitration of disputes, and in determining the applicability of an arbitration clause, the underlying question is whether the parties decided in the contract to submit a particular dispute to arbitration. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

**B. Discussion**

According to Midland, Plaintiff entered into a binding arbitration agreement with Comenity, Midland's predecessor in interest, and Comenity's right to compel arbitration transferred to Midland upon assignment. (ECF No. 25 at 1–2.) In addition to its Memorandum in Support of its Motion to Compel and Motion to Dismiss, Midland filed

5

declarations of Ms. Andrea Dent, senior paralegal with Comenity, LLC, ("Dent Declaration")(ECF No. 25-1), and Sean Mulcahy, Manager Media for MCM, ("Mulcahy Declaration") (ECF No. 25-2). Included with the Dent and Mulcahy Declarations are four exhibits: (1) a Bill of Sale and a Portfolio Level Affidavit of Sale, (ECF Nos. 25-1 at 12–16; 25-2 at 5–9); (2) a Copy of Plaintiff's Credit Card Account Agreement, (ECF Nos. 25-1 at 6–8; 25-2 at 10–12); (3) a final copy of the billing statement sent to Plaintiff from Comenity Bank, (ECF Nos. 25-1 at 9–11; 25-2 at 13–15); and (4) a letter June 22, 2017 purporting to inform Plaintiff that Comenity Bank had charged off his account and sold it to Midland Funding, (ECF Nos. 25-1 at 17–18; 25-2 at 16–17).

Midland argues that Comenity Bank sold and assigned all rights, title, and interest in the account to Midland, including its right to arbitrate. (ECF No. 25 at 11, 16.) In response, Plaintiff does not contest the validity of an arbitration agreement, rather challenges whether Midland has the contractual authority to enforce the Credit Card Agreement's Arbitration Provision. In furtherance of this challenge, Plaintiff offers three (3) major arguments as to why the Court should not compel arbitration: (1) Defendants have not demonstrated that the Credit Card Agreement provided applied to Plaintiff's account; (2) that Defendants have not shown that Comenity Bank assigned the right to invoke arbitration to Midland; and (3) that the dispute does not fall within the scope of the arbitration agreement Defendants rely upon. (ECF No. 31 at 3.)

6

### 1. Whether the Terms of the Credit Card Agreement Apply to Plaintiff's Account

The Court will first address Plaintiff's argument that Defendants have not demonstrated that the Credit Card Agreement they rely upon in seeking arbitration governed his account. (*See* ECF No. 31 at 16.) The Court concludes that a document is not necessary to make a showing that a party has agreed to arbitrate. Under Delaware law, the sole act of making a purchase on a credit card account binds the card holder to the cardmember agreement governing the account. *See Dwyer v. Discover Fin. Servs.*, No. CV WMN-15-2322, 2015 WL 7754369, at *2 (D. Md. Dec. 2, 2015). Plaintiff states that he used the relevant account. (ECF No. 1 ¶ 25.) Additionally, Defendants have provided a sworn affidavit indicating that the Credit Card Agreement was mailed to Plaintiff. (*See* ECF Nos. 25-1 ¶¶ 7–9.)

Despite this, Plaintiff contends that his account was opened on June 23, 2014, but the Credit Card Agreement presented by Defendants contains the notation "3/15" which suggests that it was implemented after Plaintiff opened his account.[2] (ECF No. 31 at 16.) Plaintiff also argues that the Court should disregard the declarations provided by Defendants as hearsay because the declarants did not attach the business records demonstrating that the Credit Card Agreement was mailed to Plaintiff. (*Id.* at 17–19.) However, the custodian of a business record need not create a business record, speak to the creator of the record, or confirm the accuracy of the record for a court to find his testimony to be credible. *See United States v. Wein*, 521 F.

---

[2] Even if the Court accepts Mr. Warner's assertion that the "3/15" notation indicates that the Credit Card Agreement was not implemented until after he signed up for the credit card, review of the unredacted Sale File provided by Defendants reflects that Mr. Warner made a purchase after March 2015 which would indicate that he accepted the agreement under Delaware law.

7

App'x 138, 140 (4th Cir. 2013). Therefore, the Court does not require such a showing at this stage in the litigation.

Moreover, with respect to Mr. Warner's debt in particular, Ms. Dent, provided an affidavit and related bill of sale that establishes that Mr. Warner's account was one of the accounts included in the bill of sale. (*See* ECF Nos. 25-1 at 5, 13-14; 25-2 at 6–7.) While Plaintiff argues that this is hearsay and should not be considered by the Court, such evidence may properly be considered by the Court under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Therefore, Midland has provided credible, admissible evidence to support a finding that the Credit Card Agreement, and Arbitration Provision therein, does apply to Plaintiff's account. Moreover, Plaintiff has failed to produce any evidence to substantiate his denial of the agreement to arbitrate.

### 2. Whether the rights under the Arbitration Agreement were assigned to Midland

According to Plaintiff, Defendants have not demonstrated that the rights under the Arbitration Agreement were assigned to Midland and have failed to demonstrate that the scope of the arbitration agreement extended to grant an assignee—Midland—the ability to elect arbitration. The Court will first consider whether Comenity's rights under the Arbitration Agreement were assigned to Midland.

In support of Plaintiff's argument that Midland has not provided evidence that Comenity assigned its arbitration rights to them, he points to two unrelated agreements between Midland and non-parties to show that "Midland sometimes takes assignment of

8

charged-off accounts from banks without taking assignment of the banks' right to arbitrate." (ECF No. 31 at 12.) The Court does not find these unrelated agreements between Midland and entities that are not a part of this suit germane to this matter. The Court will not engage in further discussion related to these irrelevant agreements.

Plaintiff further asserts that Midland did not include a purchase agreement which would be necessary to determine which rights Comenity assigned to Midland. (*Id.* at 15.) In response, Midland provides another Declaration of Sean Mulcahy, and attaches the relevant Credit Card Account Purchase Agreement ("Purchase Agreement") it contends reflects that Comenity assigned "all of [its] rights, title and interest in and to" a portfolio of Comenity's charged-off accounts which included Plaintiff's account.[3] (*See* ECF Nos. 36 at 4; 36-2 5–48.) Thus, this Court finds that Defendants have submitted sufficient evidence to establish that Midland is indeed the assignee of Comenity's rights under the Credit Card Agreement.

### 3. Whether an Assignee can Elect Arbitration

With respect to Plaintiff's final contention, there is no dispute that the relevant Credit Agreement between Plaintiff and Comenity Bank included a provision titled "Transfer of Rights/Assignment" which provides: "[Comenity] may transfer or assign [Plaintiff's] Account and/or this Agreement, or any of [its] rights under this Agreement, to another person or entity at any time without prior notice to [Plaintiff] or [Plaintiff's] consent." (ECF No. 25-1 at 8.) There is also no dispute that Comenity assigned rights under the Credit Card Agreement to

---

[3] The copy of the Purchase Agreement the Midland submits alongside its reply, (*see* ECF No. 36-2 at 5–48), is the document that is the subject of its pending Amended Motion to Seal. The Court will discuss Midland's filing of the Purchase Agreement below.

9

Midland. In fact, Plaintiff concedes that "[a]s a result, Midland now 'stands in the shoes' of Comenity" and that this "means that, contractually, Midland occupies the same position, relative to Mr. Warner, as Comenity would have stood had the assignment never taken place." (ECF No. 31 at 6.) Despite this concession, Plaintiff argues that "the proper analysis for determining the scope of Midland's arbitration right is not to strike out the words 'Comenity Bank' in the Credit Card Agreement and replace them with 'Midland.'" (ECF No. 31 at 6–7.) To that end, Plaintiff argues that the words "we," "us," and "our" in that Arbitration Provision are not defined to include assignees of Comenity. (*Id.* at 7–8.)

Plaintiff's argument is convoluted and inexplicably contradictory. Plaintiff first argues that the words "we," "us," and "our" have a different definition when they are used in the Arbitration Provision section of the Credit Card Agreement than when they are used throughout the rest of the Credit Card Agreement. (*Id.*) Plaintiff then appears to argue that the dispute between the parties is not arbitrable because the dispute is against Midland, not Comenity, and the scope of the Arbitration Provision is limited to claims between him and Comenity. (*Id.* at 9.) Plaintiff reads the Arbitration Provision as not authorizing assignees to enforce this provision. According to Plaintiff the only entities with the authority to elect arbitration are Comenity; any parent, subsidiary, or affiliate of Comenity; and any other person or company that provides services in connection with the Credit Card Agreement. (ECF No. 31 at 7.)

Plaintiff's position is contrary to Delaware law which provides that an assignee "step[s] into the shoes of the assignor" upon assignment. *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001). As established above, as Comenity's assignee, Midland

enjoys the same rights that were enjoyed by Comenity, including its right to elect arbitration. Moreover, to conclude otherwise would render other parts of the Credit Card Agreement surplusage. It is a fundamental principle of contract law that a contract should be read as a whole. *See Bank of N.Y. Mellon v. Commerzbank Capital Funding Tr. II*, 65 A.3d 539, 549 n.30 (Del. 2013) (quoting *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010)). Thus, Midland has presented sufficient evidence to establish that they may enforce the arbitration agreements entered between Plaintiffs and Midland's predecessors in interest.

Finally, although the FAA requires a court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements, *see* 9 U.S.C. § 3, the Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l. Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). Because all of Plaintiff's claims in the instant matter arise from a dispute subject to the arbitration agreement, dismissal of this action is appropriate. *See Id.* The Court will now move to Midland's Amended Motion to Seal.

### III. MOTION TO SEAL

"The courts of this country recognize a general right to inspect and copy . . . judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law

tradition that court proceedings are presumptively open to public scrutiny." *Id.* (citation omitted). "The common law," however, "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265–66 (quoting *Rushford*, 846 F.2d at 253). The First Amendment presumptive right of access, in contrast, extends "only to particular judicial records and documents." *Id.* at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). However, it may only be restricted upon a showing that such a restriction is "necessitated by a compelling government interest and . . . narrowly tailored to serve that interest." *Id.* at 266 (citation and internal quotation marks omitted).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (citing *Rushford*, 846 F.2d at 253). Substantively, a district court must "first 'determine the source of the right of access with respect to each document.'" *Doe*, 749 F.3d at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576). Procedurally, a district court presented with a sealing request must

> (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

12

*Id.* at 272. The burden rests on the party seeking to keep information sealed. *Va. Dep't of State Police*, 386 F.3d at 575. The party seeking to seal must provide specific reasons to support its position. *Id.*

Midland has moved this Court to seal portions of Exhibits 1 and 2 to the Mulcahy Declaration that were filed in connection to the reply in support of to their Motion to Compel Arbitration and to Dismiss Class Action Complaint. (ECF No. 53.) According to Midland, the exhibits "contain confidential, competitively sensitive business information regarding Midland Funding's acquisition of a portfolio of credit card accounts, including Plaintiff's, from Comenity Bank." (ECF No. 54 at 2.) Defendants argue that sealing the exhibits is necessary to protect Midland from significant competitive harm. (*Id.* at 8.) Plaintiff also asserts that certain contents of the exhibits are not relevant to this Court's determination of whether Comenity Bank excluded the right to arbitrate from the assignment. (*Id.* at 7; *see also* ECF No. 42 at 3.) Plaintiff opposes Midland's motion and argues that their motion does not comply with this Court's Local Rules and have failed to provide specific reasons to keep the two exhibits from public view. (ECF No. 41 at 3.)

Here, the Court finds that the notice requirements have been satisfied as set forth in *Stone* and *Rushford*. Public notice of the instant request to seal was given in February 2019 when Defendants initially moved to seal and filed their accompanying brief. (ECF Nos. 37; 38.)

Turning to the substance of the motion, Midland requests that portions of Exhibits 1 and 2 of the Mulcahy Declaration be redacted. (ECF No. 53.) Exhibit 1 to the Mulcahy Declaration is a copy of the Purchase Agreement between Midland Funding and Comenity

13

Case 1:18-cv-00727-LCB-LPA   Document 56   Filed 08/05/21   Page 13 of 17

Bank. (ECF No. 36-2 at 5–48.) Exhibit 2 is a portion of the sale file of the portfolio sale ("Sale File"). (*Id.* at 49–64.) Midland asserts that if information in the Purchase Agreement and Sale File is disclosed to the public, it would result in irreparable harm in connection to their efforts to conduct business in the future. (ECF No. 38.) Midland also argues, in response to Plaintiff's objection to the sealing, that the "redacted portions of the Purchase Agreement and Sale Data Excerpt are not judicial records" as the relevant portion of the Purchase Agreement "is limited to a single sentence, or lack thereof, in a forty-two-page long document" and "no other terms . . . or any other clauses are relevant for purposes of deciding the Motion to Compel Arbitration." (ECF No. 42 at 2–3.). To that end, Midland proposes that virtually all information contained in the exhibits be sealed.

The interest in preserving the confidentiality of sensitive business information can be sufficiently compelling to overcome the public's First Amendment right of access. *See Hutton v. Hydra-Tech, Inc.*, No. 1:14-CV-888, 2018 WL 1363842, at *9 (M.D.N.C. Mar. 15, 2018); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2018 WL 3466945, at *2 (M.D.N.C. July 18, 2018). In past instances where this Court had to determine whether motions to seal should be granted based on claims of confidential business information, this Court has considered:

> whether disclosure would harm the party's competitive standing or otherwise harm its business interests; *whether the motion is narrowly tailored*; and whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information. In weighing the competing interests, the Court considers, among other things, whether access to the evidence is needed to understand the Court's decision . . . and the degree of harm that disclosure would be likely to cause.

14

*Sims v. BB&T Corp.*, No. 1:15-CV-732, 2018 WL 3466945, at *2 (M.D.N.C. July 18, 2018) (emphasis added) (discussing a party's motion to seal in connection with a motion for summary judgment).

After weighing the interest of the Defendants and the public, the Court will permit the sealing of the Purchase Agreement and certain portions of the Sale File. Normally, where a party requests the sealing of a document to the extent Midland has in this case, the Court would reject such a request and a blanket sealing of this nature would not be permitted. However, by virtue of Plaintiff's argument, the Court determined it was necessary for it to examine the entirety of the Purchase Agreement to reach a determination on the pending Motion to Compel and Dismiss. Review of the complete unredacted Purchase Agreement reveals that there is no provision that would indicate that the right to arbitrate was excluded as a right assigned to Midland pursuant to the agreement. Therefore, the remaining portions of the Purchase Agreement are not germane to the Court's determination of Defendants' motion to compel.

With respect to the Sale File, Midland relied on this spreadsheet to support its assertion that Plaintiff's account was sold to Midland. This evidence was integral to the Court's decision to compel arbitration. Because this information was a primary consideration in the Court's decision to compel arbitration, the public has a strong interest in access to the spreadsheet. However, Midland has provided an affidavit expressing that the Sale File excerpt has been redacted to protect Plaintiff's privacy interests as it contains personal identifying information and details of his alleged outstanding debt and other financial details. (ECF No. 42-2 ¶ 13.)

Aside from his name, Plaintiff's personal identifying information is not necessary for the public's understanding of the Court's decision to compel arbitration. Beyond its discussion of the personal identifying information contained in the Sale File, Midland did not support its contention as to how other items in the Sale File such as the sale date, the division name, last purchase date, or the date Plaintiff opened his account are related to Plaintiff's privacy interests. This information, however, is relevant to the Court's decision to compel arbitration and as earlier stated, was used by the Court in making its decision.

Therefore, the Court will grant Midland's motion to seal as it relates to all personal identifying information related to Plaintiff that was previously redacted and information that was not relevant to the Court decision to compel arbitration. However, information the Court used to reach its determination to compel arbitration should not be redacted. Specifically, the Court will not grant the sealing of the following columns:

- Division Name (DIV-NAME);
- Open Date (OPEN-DATE);
- Last Purchase Date (LAST-PRCH-DATE)

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Compel Arbitration and to Dismiss Class Action Complaint, (ECF No. 24), is GRANTED.

IT IS FURTHER ORDERED that Midland Defendants' Amended Motion to Seal, (ECF No. 53), is GRANTED in part and DENIED in part. Specifically, Midland is directed to file a public version of the Sale File that does not redact the Division Name, the Open Date, and the Last Purchase date.

IT IS FURTHER ORDERED that Midland Defendants' initial Motion to Seal, (ECF No. 37), is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion to Certify Class and Motion for Preliminary Injunction, (ECF No. 2), currently stayed pursuant to an Order of the Court, (ECF No. 44), is DENIED as moot.

IT IS FURTHER ORDERED that upon the filing of this Order this action shall be DISMISSED.

This, the 4th day of August 2021.

/s/ Loretta C. Biggs
United States District Judge